## REPUBLIC OF TURKEY v. ZADEH et al.
## THE YOZGAT.

United States District Court
S. D. New York.

June 11, 1953.

Landsman & Levin, New York City, for libelant.

Harry Torczyner, New York City, for respondent.

DIMOCK, District Judge.

Libelant moved for an order pursuant to Admiralty Rule XXIII of this court, permitting libelant to make a withdrawal from cash deposited in the registry of this court by the cargo claimant. Respondent countered with a plea in abatement. Consideration of the motion for leave to withdraw cash from the registry of the court has therefore been postponed until determination of the plea in abatement.

Turning to the plea in abatement, the respondent Zadeh makes two points, first, that the cause of action is no longer vested in libelant and, second, that the court has no jurisdiction over the funds deposited in the registry of the court.

The action is one for freight brought by the alleged owner of the steamship Yozgat against the charterer Zadeh in personam and against the cargo in rem. The cargo claimant deposited the freight in the registry of the court so that the substantial controversy is between the owner, or its assignee, and the charterer. Respondent's point that libelant is not the owner of the cause of action is based upon his claim that the Yozgat was at one time owned by the organization named in the title as Devlet Denizyollari ve Limanlari Isletme Genel Mudurlugu, hereinafter referred to as Denizyollari, but that on February 2, 1952, Denizyollari, which he claims was a corporation was abolished and all of its assets and causes of action were transferred "for the benefit of a private joint stock corporation known as Denizcilik Bankasi or for the benefit of corporations which Denizcilik Bankasi was authorized to create" and that all causes of action involving the Yozgat were thereafter transferred to

the Turkish Maritime Lines, a corporation formed by Denizcilik Bankasi. In support of this, respondent (a) submits an opinion of a Turkish lawyer dated September 11, 1951, that Denizyollari "is considered in its relations with third persons as a private company and is a juridical personality distinguished from the state", (b) cites a decree of the Turkish Council of Ministers which is alleged to have abolished Denizyollari and (c) submits a copy of an extract from the British weekly shipping journal "Fair Play" of Thursday, March 12, 1953, which refers to the Yozgat as a vessel of the Turkish Maritime Lines.

In opposition, libelant submits a statement from the Turkish Ambassador to the Secretary of State, dated September 6, 1951, stating that on that date the Yozgat was the property of the Republic of Turkey and was then operated and controlled by the Republic of Turkey. Long before respondent interposed his plea in abatement libelant's counsel had asked respondent's counsel for consent to the substitution of Denizcilik Bankasi as libelant and now moves for its addition as a party libelant.

On the record in this case, it seems to me to make little difference whether Denizyollari was a mere department of the Republic of Turkey or a separate corporation. Respondent and libelant agree that whatever was vested in Denizyollari became vested in Denizcilik Bankasi.

■■ The only claim of respondent as to the ownership of the cause of action that raises any difficulty is the claim that it has passed from Denizcilik Bankasi to the Turkish Maritime Lines. While respondent's counsel alleges this on information and belief the only source and ground that he sets forth for that information and belief is the extract from Fair Play above referred to which deals only with the ship itself. There is no claim that Denizcilik Bankasi has gone out of existence or that there is any conflict of interest between it and the Turkish Maritime Lines. Indeed respondent claims no more than that Denizcilik Bankasi has divided its ships among three subsidiary corporations of which the Turkish Maritime Lines is one. The worst

that respondent can fear is that there has been such a transfer to the Turkish Maritime Lines and that a payment to Denizcilik Bankasi would not be recognized by the Turkish Maritime Lines. I do not think that that fear has any substantial factual basis and the law is clear that in admiralty a suit may be maintained in the name of an assignor for the benefit of an assignee. 2 Benedict, Admiralty, 6th Ed., § 245, p. 83; The Emma L. Coyne, D.C.E.D.Mich., Fed. Cas.No.4,466.

Denizcilik Bankasi may be added as a party libelant and when that has been done respondent's plea, insofar as based upon an alleged defect of parties, will be denied.

In urging that the court has no jurisdiction over the in rem cause of action, libelant necessarily takes the position that the cargo claimant was powerless to give the court jurisdiction by paying the freight into court. What happened was that the libelant made the usual allegation in the libel that the 8100 tons of cargo "are now, or during the pendency of this litigation will be within this District". The cargo claimant appeared generally and deposited in the registry of the court the freight due the respondent Zadeh. Respondent takes the position that, since the cargo itself was not and never had been within the jurisdiction, the libel in rem must be dismissed and the freight that has been deposited by the cargo claimant must be returned to the claimant.

■■ Taking this position, respondent ignores the practice of conferring jurisdiction upon a district convenient for the parties by admission of the court's jurisdiction on the part of the owner of the res and his placing in the jurisdiction of the court money, as in this case, or a stipulation for its value, as a substitute for the res.

Benedict explains the legal basis for this practice as follows:

"The District Court does not obtain jurisdiction if the property is attached or arrested outside the limits of the district, unless the claimant waives the irregularity of the property being outside the district. Thus, if the claimant of the res files a general appearance

and a claim and admits the allegation 'that the property is, or during the currency of process will be within the district,' the jurisdiction in the district where the libel in rem has been filed becomes complete in respect of the res and the parties. The fictitious allegation that the res is within the district, and the waiver of the irregularity by the claimant, enables parties to conduct suits in rem in any district satisfactory to them." 2 Benedict, Admiralty, 6th Ed., § 242, p. 78.

In The Providence, D.C.D.R.I., 293 F. 595, a libel in rem was filed against the vessel for damages for collision. The owner appeared as claimant and filed a petition under Admiralty Rule 56 bringing in the pilot of the vessel as the party responsible for the collision. The pilot excepted to the petition on the ground that the vessel never had been, and was not then, within the jurisdiction of the court. After the filing of the exception the claimant filed a stipulation for value for $5,000. The court said, 293 F. at page 596:

"It is the contention of Mugan, the pilot, that in order that this court may have jurisdiction it must appear that at the time of filing the libel and issuing the process the vessel was actually within this district, and that, as against him at least, no consent of parties can confer jurisdiction. It is not contended that an actual seizure is essential to give jurisdiction. It is conceded that this may be obviated by appearance and giving bond to the marshal, or by stipulation for value; but it is contended that the vessel must be within reach of the court's process. While it is required by admiralty rule 22 that there shall be an allegation 'that the property is within the district,' a res is not necessarily a vessel, and a stipulation for value, which is a substitute for the res, being now on file, I am of the opinion that, whatever force there might have been in Pilot Mugan's objection to jurisdiction prior to the filing of the stipulation, the situation is materially changed by the fact that a substitute for the res is now within

the control and subject to the disposition of the court, according to its finding of the merits of the cause of action."

Respondent's plea in abatement, insofar as it is based upon lack of jurisdiction of the court, is therefore denied.

By further notice libelant may bring on for hearing before me the pending motion for leave to withdraw the deposited cash.