P. DIACON–ZADEH, Libellant,

v.

DEVLET DENIZYOLLARI, Richard Nathan Corporation, THE S.S. YOZGAT and a Cargo of Pig Iron and Sureyya Gursu, her master, Respondents.

No. 193 of 1951.

United States District Court, E. D. Pennsylvania.

July 26, 1954.

Charles Lakatos, Freedman, Landy & Lorry, Philadelphia, for plaintiff.

George E. Beechwood, John V. Lovitt, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

These exceptive allegations are not denied by answer and they bring before the Court undisputed documents and the record of court proceedings. A Court, of course, takes judicial notice of its own record and, in a case like this, in which the main issue is res judicata and the case turns upon the scope and effect of proceedings involving substantially the same parties in the District Court for the Southern District of New York, Republic of Turkey v. Zadeh, 112 F. Supp. 933, this Court may properly consider that record as well. With one exception, any possible fact dispute relates to matters immaterial to the issue now before the Court. The facts are as follows:

On July 2, 1951, the S. S. Yozgat arrived at Philadelphia from Filios, Turkey, and began unloading a cargo of pig iron. She was owned by a Turkish Government agency (Devlet), chartered by the libellant (Zadeh) and subchartered by him to Richard Nathan Corporation (Nathan), the owner of the cargo, and one of the respondents in this action.

While the unloading was going on, on July 14, 1951, this libel was filed by Zadeh against Devlet, Nathan, the vessel, her master, and the cargo. We are concerned only with the cause of action stated against Nathan, which consists in substance of claims for earned freight, earned dead freight, and demurrage at both Filios and Philadelphia, amounting in all to something over $107,000. Nathan appeared and obtained a release of the cargo, which had been seized by the marshal, by posting bond of $50,000. There have been subsequent proceedings in this Court but they have no direct bearing upon the issue now under consideration.

Meanwhile, also while the vessel was unloading, and before this action was begun, namely on July 11, Devlet commenced an action in the Southern District of New York, in personam against Zadeh and in rem against the cargo. On the same day Nathan appeared in that action as owner of the cargo and claimed the same and entered into a stipulation for the deposit of $110,000 with the clerk of the New York District Court, in consideration of Devlet's refraining from seizing the cargo. The money was deposited and subsequently Nathan tendered $73,102.50 of the amount for payment in the Court's discretion and asked that it be given proper acquittance therefor. Nathan has never disputed and, in effect, has always admitted that it owed this amount for freight to either Devlet or Zadeh. On August 20, Judge Conger of the United States District Court in New York made an order relieving Nathan from "any and all liability to the libelant (Devlet) or respondent (Zadeh) to the extent of the sum of $73,102.50."

■ I have no doubt that the District Court of New York had jurisdiction both of the parties and of the res. Zadeh was a respondent in the in personam action and was properly brought into court. Nathan, the cargo claimant, appeared generally, see Judge Dimock's opinion, The Yozgat, D.C., 112 F.Supp.

933, 1953 A.M.C. 1728, and his stipulation and deposit of $110,000 gave the Court jurisdiction of the action in rem as fully as if the cargo had been seized in New York. Judge Dimock so ruled and his view is amply supported by authority. See 2 Benedict on Admiralty, 6th Ed. 242, page 78; The Providence, D.C., 293 F. 595, 596; J. K. Welding Co., Inc., v. Gotham Marine Corp., D.C., 47 F.2d 332, 335. In the last named case Judge Woolsey said: "The stipulation for value is a complete substitute for the res, and the stipulation for value alone is sufficient to give jurisdiction to a court because its legal effect is the same as the presence of the res in the court's custody."

The libellant's claim against Nathan, which is the only matter involved in these exceptive allegations, consists of three items:

■ (1) Demurrage in an estimated amount of $21,625. The decree of the New York court awarding Nathan dispatch both at Filios and at Philadelphia eliminates this claim. The decree was upon an arbitration award. The question of whether there was delay, which is raised by the claim for demurrage asserted in this libel, was necessarily disposed of in arbitrating the matter of dispatch. The decree of the New York court was, therefore, res judicata as to this item.

■ (2) The claim for $9,025 for dead freight was based upon the contention that 9,000 tons should have been loaded. However, the charter for the Yozgat limited the cargo to 8,100 tons. It is admitted that 8,100 tons were loaded, and the libellant does not assert that the charter was not controlling or plead any matter showing that it was not. On the pleadings and undisputed documents, the claim is without foundation.

(3) The remaining item of the libellant's claim is $76,950 for freight (8,100 tons at $9.50 a ton). Of this amount, $73,102.50 (tendered in the New York action) represents the balance of freight

money due after deducting 5% brokerage fees in accordance with the charter.

As to the freight claim of $73,102.50; I think that it was the intent and effect of Judge Conger's order to give Nathan a full acquittance as to this amount. The order itself is unqualified. It is that the claimant, "Richard Nathan Corporation be and it hereby is relieved of any and all liability to the libelant or respondent to the extent of the sum of $73,102.50, said amount having been tendered by claimant for payment to either the libelant or respondent." I believe that Judge Conger's memorandum filed in connection with the order was not intended to limit its terms but merely to express his view that whether or not the order would eliminate the respondent's claims was a matter for the District Court in Philadelphia and that he did not intend the order to be taken as having the effect of interfering with the proceedings in Philadelphia.

Judge Conger's order recites that Nathan has tendered the sum for payment. In tendering the money Nathan admitted that it was owing either to Zadeh or to Devlet. Having paid it into a court of competent jurisdiction, all liability in connection with it is extinguished as fully as though it had been paid to the party to whom it was owing.

As to the brokerage fees amounting to $3,847.50; the libel claims this amount of money as due and owing from Nathan to Zadeh as part of the larger claim of $76,950. The exceptive allegations state that one-half of the fees, or $1,923.75, has been paid, a fact not denied by the libellant. As to the remaining $1,923.75, the exceptive allegations merely say that under the decree of the New York court Zadeh owes Nathan $6,311.30 and, therefore, this claim for brokerage fees can be disregarded. However, the brokerage fees were not involved in the arbitration between Zadeh and Nathan which resulted in a judgment in favor of Nathan for $6,311.30, and a libel which sufficiently states a claim for money due cannot be dismissed because the respondent has a claim against the libellant larger than the amount claimed in the libel.

The exceptive allegations are sustained as to all of the libellant's claim except as to that part of the claim for freight amounting to $1,923.75.