[Civ. No. 31563. Second Dist., Div. Five. June 6, 1968.]

AGRICULTURAL INSURANCE COMPANY, Plaintiff and Appellant, v. MELVIN J. SMITH et al., Defendants and Respondents.

Goldstein & Brann, Alfred G. Johnson and Franklin K. Brann for Plaintiff and Appellant.

Grundell & Fredman and William R. Fredman for Defendants and Respondents.

HUFSTEDLER, J.—Appellant, Agricultural Insurance Company appeals from a judgment in favor of respondents, Melvin J. Smith, et al., in an insurance subrogation action brought by the appellant against the respondents to recover payments it claims to have made on behalf of its insureds, the lessors of a building leased to respondents, on account of damages to the building caused by fire.

In its amended complaint the following facts were averred: Appellant had issued a policy of insurance to the named lessors of the premises, insuring them against loss or damage by fire. The respondents were in exclusive possession of the insured premises under a lease, a copy of which was incorporated into the pleading. While the insurance was in effect, the premises were damaged by a fire negligently caused by the respondents. Pursuant to its policy of insurance, appellant paid $33,783.43 to repair the damage to the property. The second cause of action recited the terms of a clause of the lease between respondents and the lessors of the premises requiring the lessees to indemnify the lessors for loss, damage or expenses of any kind arising out of any acts or omissions on the part of the lessees or their agents, guests or patrons, which caused injury or damage to the property. While the policy and lease were in effect, respondents through their agents undertook to do some painting work on the premises, during the course of which the fire occurred which damaged the building. Appellant was reasonably required to and did

expend $33,783.43 to repair the premises, for which it sought indemnification from the respondents as equitable subrogee of the lessors.

In their amended answer the respondents denied the principal charging averments of the amended complaint, although they admitted the existence of the lease, and set up a series of affirmative defenses, including a speaking demurrer challenging the sufficiency of the amended complaint to state a cause of action "because these answering defendants [respondents] were insured under the policy of insurance upon which plaintiff relies."

A pretrial order was filed which included the statement of the following as one of the admitted facts: "This is a subrogation action resulting from damages arising out of a fire in a building . . . which was insured by the plaintiff [appellant]."

At the trial of the action before a court sitting without a jury, appellant introduced evidence that the respondents, using their own employees and their own materials, undertook to paint portions of the demised premises, including the interior of one of the offices. One of defendants' employees masked a gas heater, but did not extinguish the pilot light. The employees who were doing the painting were not warned about the failure to extinguish the pilot light, and they did not inspect the heater. Thereafter the respondents' employees sprayed the room with a flammable substance and applied a flammable cleaning substance to remove paint spots. During the course of spot removing, there was a burst of flame, and the building was damaged by the fire. The building was repaired by Maino Construction Co., for which a bill was submitted by it to the appellant for $33,070.50, and certain clean-up work was done by one of the respondents, for which appellant was billed $712.86.

Respondents' objections to the offer of copies of the bills, of the copies of the proofs of loss, and to the testimony of appellant's witness, Mr. Campbell, concerning payment of the bills, were all sustained in a single ruling, the court having theretofore reserved ruling on the objections as they were made. The court said: "All of the objections heretofore made from the introduction of Mr. Campbell as a witness are sustained, and the motions to strike are granted. This ruling is based on the assertion of Mr. Brann that the alleged policy of insurance covering the property tenanted and inhabited by the Defendant cannot be produced. And the Court will specifically find that Defendant raised—or, strike that—that the

issue of the existence of a policy of insurance was raised in the pleadings and was not eliminated as an issue in the pre-trial order. The Court will specifically find that the Defendants are entitled to have the policy proved and have it produced, and the Court will now entertain a motion for judgment on the pleading.''

Appellant's counsel pointed out that he had earlier told the court that he could produce a witness from San Francisco and that he desired to make an offer of proof about the testimony to be elicited from that witness before the court ruled. The court acceded to his request, and appellant's counsel made the following offer of proof: ''I will offer to prove by the testimony of the claims superintendent of the Cravens Dargan Company which is general agent for the Agricultural Insurance Company as of the time of the loss here that the records of the Agricultural Insurance Company indicate that a policy of insurance was issued to John Gibson, Flora Edna Pearl, Helen N. Nielsen, and Alexander F. Gibson. That they were the named insured of the premises commonly known and described as 1039 or 1049 Monterey Street, San Luis Obispo. Being the location of the Mel Smith Chevrolet Company. The number of the policy was 519215. That the applicable fire coverage was on the standard form 79, and that their file number—excuse me one moment, Your Honor—was 8689. And that pursuant thereto, they ascertained that coverage was in effect, and that pursuant thereto a proof of loss was presented to them, signed by the named insureds, by reason whereof, the amount prayed in the Complaint was paid to the Maino Construction Company and to Melvin Smith. In the approximate respective amounts of $33,000 as shown by the exhibit received for identification to Maino Construction Company and the approximate amount of $700.00 paid to Mr. Smith for some clean-up work. And that Agricultural Insurance Company paid the amount recited, $33,881.32, by reason of what it considered to be a legal obligation to pay under then existing contract of insurance for which their records would indicate that he had received a premium.'' There was no objection to the offer of proof. Nevertheless, the court rejected the offer of proof and granted ''motion for judgment on the pleadings.''

Pursuant to directions of the court, findings of fact and conclusions of law were prepared. The findings and conclusions signed by the court recited the existence of the tenancy between the respondents and the lessors. Disregarding the legal conclusions, the findings relate to the failure of appel-

lant to prove the existence and the contents of the policy of fire insurance.[1] No findings were made upon the question of the claimed negligence of the respondents, proximately causing the fire, nor upon any other issue of fact in the case. The conclusions of law recited the nonliability of the respondents to the appellant, the failure of the appellant to produce the original policy, and the failure to "prove or offer to prove that the original policy had been lost or destroyed." Finally, the conclusions of law stated that judgment was granted to the respondents in accordance with the provisions of section 631.8 of the Code of Civil Procedure.[2] Judgment was accordingly entered, from which this appeal is taken.

The parties agreed in oral argument that both respondents' counsel and the court inadvertently used the terminology "judgment on the pleadings," and that respondents' counsel intended to move for judgment pursuant to section 631.8 of the Code of Civil Procedure and the court intended to grant that motion rather than a motion for judgment on the pleadings.

The trial court decided that appellant had not made out a prima facie case of liability because appellant failed to offer primary evidence upon two subjects, both of which the court thought were essential issues in the case: (1) the existence of

---

[1] "2. Plaintiff, AGRICULTURAL INSURANCE COMPANY, failed to make any proof that, prior to January 6, 1957, in consideration of a premium to it paid, said Plaintiff executed and issued to JOHN GIBSON, FLORA EDNA PEARL, HELEN N. NEILSEN, and ALEXANDER F. GIBSON, a policy of insurance insuring said persons in the sum of $60,000.00 against loss or damage, by fire, to the buildings and other property located at 1039 Monterey Street, in the City of San Luis Obispo, County of San Luis Obispo, State of California.

"3. That Plaintiff, AGRICULTURAL INSURANCE COMPANY, failed to make proof that Plaintiff become liable under a policy of fire insurance to pay for damages caused by fire at the premises, 1039 Monterey Street.

"4. That Plaintiff, AGRICULTURAL INSURANCE COMPANY, failed to make proof of the contents of any fire insurance policy issued by it and covering premises, 1039 Monterey Street, San Luis Obispo, California.

"5. That Plaintiff, AGRICULTURAL INSURANCE COMPANY, failed to make proof that an original fire insurance policy had been issued by said company to JOHN GIBSON, FLORA EDNA PEARL, HELEN N. NEILSEN and ALEXANDER F. GIBSON, but that said original policy was lost or destroyed."

[2] Code of Civil Procedure, section 631.8, provides in pertinent part: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code, . . ."

a policy of insurance written by appellant in favor of respondents' lessors and (2) the contents of the policy.

The existence of a policy of insurance written by the appellant in favor of the lessors of the premises was not in issue. Although the respondents denied the averments of the amended complaint stating the execution of the insurance policy in favor of the lessors in one part of their amended answer, in another part of the same answer respondents alleged that they were insureds under the policy on which the appellant relied. In their pretrial statement, respondents said: "Defendants contend however that the exculpatory provisions of the lease, relieving lessee of liability for damage by fire, and the further provision that in the event of fire and the election of lessor not to rebuild, lessee could properly do so with the proceeds from the fire insurance, constitutes a complete bar to plaintiff's claim. It is obvious that the parties contracted in contemplation of the existence of and in reliance upon the fire insurance policy here involved and . . . that the rents provided for in the lease constitute ample consideration for the value of the premises occupied, including the cost of the insurance here involved." The pretrial contentions of the respondents thus do not purport to preserve a question about the existence of the fire insurance policy upon the premises, but rather respondents conceded the existence of the policy and claimed immunity from liability as an insured under that policy. Were there any doubt that the existence of insurance was conceded, however, the pretrial order eliminates that doubt. The order states that among the facts established for the purposes of the action is that the building "was insured by the plaintiff [appellant]." The pretrial order supersedes the pleadings, and an issue not preserved in the pretrial order is not an issue at the time of trial. No evidence need be presented upon an issue not preserved in the pretrial order, and no findings of fact can properly be made upon a nonissue. (Rule 216, Cal. Rules of Court; *Teixeira* v. *Verissimo* (1966) 239 Cal.App.2d 147, 154 [48 Cal.Rptr. 496]; *Livernois* v. *Brandt* (1964) 225 Cal.App.2d 301, 305 [37 Cal. Rptr. 279].)

Appellant was not obliged to prove the contents of its insurance policy in order to establish its prima facie subrogation case. A subrogation action by an insurer is not a suit on the insurance contract, but an independent action in which equitable principles are applied to shift a loss for which the insurer has compensated its insured to one who caused the

loss or who is legally responsible for the loss caused by another and whose equitable position is inferior to the insurer's. (*Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 96-98 [77 P.2d 1084]; *Offer* v. *Superior Court* (1924) 194 Cal. 114, 118 [228 P. 11]; *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 509-510 [64 Cal.Rptr. 187]; *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal.App.2d 369, 376-378 [334 P.2d 658].) Respondents successfully contended in the trial court that proof of the contents of the policy was essential to establish that the insurance company's payments were not voluntary because the terms of the policy might have revealed the existence of some defense which the insurer could have asserted against its insured to avoid payment.[3] Appellant insisted in the trial court that it was not required to prove the contents of the policy, but yielded to the court's contrary view and attempted to present secondary evidence of the contents of the policy. The respondents' argument assumes that a payment by an insurance company to its insured is "voluntary" within the meaning of the subrogation doctrine forbidding recovery by volunteers unless its liability to its insured under the policy is ironclad.[4] The assumption is wrong.

■ "Subrogation extends to those parties who pay in the performance of a legal duty by contract or rules of law, who pay in order to protect their own rights or interest, and whose

[3]The trial court's view is reflected by its remarks in ruling upon respondents' objections to the offer of secondary evidence: "[Y]ou are seeking to impose your rights of subrogation which, of necessity, must arise out of a legal and contractual obligation you had with your insured. And that obligation, the best evidence of it is the policy. And Mr. Fredman is complaining that how do we know that you weren't volunteers here? How do we know that you didn't assert some defense that you could have, and now you are trying to make us the victims of your oversight or your neglect. I mean, this is the complaint. Now, he is entitled to see that policy. Not only because he wants to assure himself that you were indeed and in fact legally obligated to pay, but that you asserted all the defenses you might have asserted."

Nothing in the record suggests that respondents at any time exercised their rights of discovery to ascertain the contents of the insurance policy, or that they attempted to subpoena the policy or any of the records of the appellant.

[4]To support their argument that the contents of the policy must be proved to sustain liability, respondents cite *Clendenin* v. *Benson* (1931) 117 Cal.App. 674 [4 P.2d 616]. In that case the question was whether the evidence supported a finding by the trial court reciting the terms of an automobile insurance policy. At the trial, evidence of the contents of the policy was introduced over a best-evidence objection. On appeal it was contended that there was no competent evidence supporting the finding. The appellate court, pursuant to Code Civ. Proc., § 956a, caused additional evidence to be taken before a referee to ascertain whether the

payments are favored by public policy. (*Fresno Inv. Co.* v. *Brandon* (1926) 79 Cal.App. 387, 389 [249 P. 548].)" *Employers etc. Ins. Co.* v. *Pacific Indem. Co., supra,* 167 Cal. App.2d at p. 376. ▮ Public policy favors the prompt payment of claims made by an insured against an insurer and disfavors assertion by an insurer of technical defenses to avoid liability on the policy. (E.g., *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 268-272 [54 Cal.Rptr. 105, 419 P.2d 168].) Were an insurer's right to subrogation imperiled unless it asserted all potential defenses against its insured before it paid a claim on the policy, the obvious result would be that insurers would resist prompt payment of claims. That result cannot be supported upon the principles of either equity or common sense. It is particularly indefensible where the person insisting upon that course of action is prima facie proved to be a tortfeasor whose wrong caused the loss.

▮▮ Since we have concluded that the court erred in deciding that the existence of the policy was in issue and in deciding that appellant had to prove the contents of the policy to withstand a "nonsuit," we do not reach the questions whether the court properly sustained the respondents' objections to the offer of secondary evidence and whether the court properly rejected respondents' offer of proof concerning the contents of the policy.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

---

original of the policy was lost. The court did not discuss the question here presented: whether the insurer prosecuting a subrogation action was required to prove the contents of the policy to make out a prima facie case. The most that can be said about *Clendenin* is that the court assumed that the challenged finding was essential to the judgment. Since the court did not give any reasons or cite any authority for its inarticulated assumption, we do not believe it is authority in the case at bench.