AMERICAN COMMERCIAL LINES, INC., Appellant,

v.

The VALLEY LINE COMPANY, Appellee.

No. 75–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1975.

Decided Jan. 28, 1976.

Rehearing Denied Feb. 26, 1976.

Fritz G. Faerber, Lucas & Murphy, St. Louis, Mo., for appellant.

Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for appellee.

Before CLARK, Associate Justice,* LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an action in admiralty brought by American Commercial Lines (American) against the Valley Line (Valley). In the court below, summary judgment was granted to Valley, and American appeals that judgment. We reverse and remand for further proceedings.

American is the owner of the M/V R.W. Naye, a diesel towboat which was being operated by Inland Tugs Co. (charterer) on March 19, 1975, pursuant to an oral bareboat charter party. The crew were employees of the charterer, except for the captain and pilot, who were American employees on loan to the charterer. At about 6:30 a. m. the Naye was proceeding upriver near Mile 197, Upper Mississippi River with a tow and M/V Frank C. Rand, owned by Valley, was coming downriver with a tow. The two vessels agreed upon a port to port passing, but during the passing the R.W. Naye and its tow collided with some shore structures, causing them considerable damage. American alleges that the collision was caused by the Frank C. Rand crowding the R.W. Naye out of the channel, either because of negligence or unseaworthiness of the Frank C. Rand. Valley denies this, and alleges that the sole proximate cause of the collision was unseaworthiness or negligence of the R.W. Naye.

Owners of the shore structures threatened to bring proceedings in personam against American and in rem against the R.W. Naye. In response to this threatened action American paid over $33,000 in claims and obtained purported agreements of release and assignment of the claims of the owners of the damaged shore facilities. In this suit American seeks to collect from Valley on the assigned claims.

Valley moved for dismissal of American's complaint or for summary judgment on the ground that American was a volunteer which could not have been liable to the owners of the shore structures, and therefore its payment of the claim was "champertous." Alternatively, Valley contended that the payment in full of the claim and release of American released any other joint tortfeasors, and left the payees nothing to assign; therefore the assignments were void. The district court, treating the motion as one for summary judgment under Fed.R. Civ.P. 12(b) and 56, held that American was acting as a volunteer in making the payment, because under a demise or bareboat charter the owner of a vessel cannot be held personally liable for errors in navigation. Relying on *Crain Brothers, Inc. v. Duquesne Slag Products Co.*, 273 F.2d 948, 953 (3d Cir. 1959), the trial court held that the threat of seizure of the R.W. Naye was not sufficient to compel American to pay the claims. Since the payments were determined to be officious the court granted Valley's motion for summary judgment on the basis of *Crain Brothers.*

■■■ We first note that the lower court's conclusion that American could not be personally liable for the damage to the shore facilities is not free from doubt. In its amended answer *Valley itself* alleges *inter alia* that the casualty was due to the unseaworthiness of the R.W. Naye. Unseaworthiness of a vessel may be grounds for imposing in personam liability on the shipowner, even in the presence of a bareboat charter agreement. *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973). *Crain*

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

*Brothers* was not decided on summary judgment; in that case it was determined that no possibility of in personam liability of the owner existed after a full trial of the issues. In this case if American breached its duty to provide the charterer with a seaworthy vessel and if such unseaworthiness was a proximate cause of the damage, as appellee alleges, it could be personally liable. Thus a material question of fact exists which precludes summary judgment even under the theory advanced in *Crain Brothers.* *Blum v. Schuyler Packing Co.,* 508 F.2d 881, 883 (8th Cir. 1974).

█ If there were no genuine issue of material fact, however, American may still be entitled to subrogation rights against Valley. Subrogation is an equitable rather than a contractual doctrine applied in the interests of justice when one who is not a volunteer pays an obligation which should be imposed on another. *See, e. g., Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 136–137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); Restatement of Restitution § 162 (1937). Subrogation is available in admiralty. *Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co.,* 303 F.2d 692, 696–697 (5th Cir.), *cert. denied,* 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962); *The Etna,* 138 F.2d 37, 39 (3d Cir. 1943); *Petition of New York Trap Rock Corp.,* 172 F.Supp. 638, 647 (S.D.N.Y.1959).

█ In paying the claims for damage to the shore structures American was not acting as a volunteer. It is undisputed that the payments were made under compulsion to protect the owner's own interests. *American Oil Co. v. McMullin,* 508 F.2d 1345, 1349 (10th Cir. 1975); Restatement of Restitution, *supra,* § 162, *comment b* at 655. Although it may later appear that neither American nor its vessel was liable, that was certainly not established when the claims were settled; the undisputed facts and the applicable law gave rise to a substantial likelihood that American or the R.W. Naye would be liable for the damage. A moving vessel which collides with a stationary shore structure is presumed to be at fault and has the burden of proving otherwise. *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.,* 377 F.2d 724, 726 (5th Cir. 1967). We have already mentioned the possibility of in personam liability of the owner for unseaworthiness of his demised vessel. Furthermore, the owner who seeks to show he was relieved of his legal responsibilities because of an oral demise of his vessel bears a heavy burden to show that the charter party amounted to a demise. *Guzman v. Pichirilo,* 369 U.S. 698, 700, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); *Fitzgerald v. A. L. Burbank & Co.,* 451 F.2d 670, 676 (2d Cir. 1971). This is especially true when the captain and the pilot were employees of American. If it could not prove there was an oral demise the owner could be liable in personam for unseaworthiness or any error in navigation of the R.W. Naye which was a proximate cause of damage. Even if American could not be subject to in personam liability, there is the possibility of in rem liability of the R.W. Naye for any negligence of the charterer. *The Barnstable,* 181 U.S. 464, 467, 21 S.Ct. 684, 45 L.Ed. 954 (1901); *Burns Brothers v. Central Railroad,* 202 F.2d 910, 914 (2d Cir. 1953). A threat to seize the R.W. Naye was made by the claimants in this case. Valley asserts that the seizure could have been avoided by posting a bond or convincing the claimants to accept a letter of undertaking, promising that American would pay any judgment rendered. Valley contends that American should have waited until it was sued by the owners of the damaged structures, and then brought in the charterer and Valley, and any others, as third party defendants. *See* Fed.R. Civ.P. 14(c). American could have done so, but by pursuing the alternative it did (which was considerably simpler) we cannot agree that American was acting officiously. The payments were made under legal compulsion to avoid potential in personam and in rem liability, or at least a complex lawsuit. *Dampskibsaktieselskabet v. Bellingham Stevedoring Co.,* 457 F.2d 889, 892 (9th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 466, 34 L.Ed.2d

316 (1972); *Gulf Atlantic Transportation Co. v. Becker County Sand & Gravel Co.,* 122 F.Supp. 13, 19 (E.D.N.C.1954).

■ A third reason that the judgment of the court below must be reversed is that American can sue as assignee of the claims of the shore structures' owners. The rights of an assignee differ from those of a person entitled to subrogation. "[A] person who discharges the obligation of another officiously is not entitled to subrogation, whereas a person who has obtained an assignment from the obligee can enforce the obligation without regard to any question of his officiousness." Restatement of Restitution, *supra,* § 162, *comment h,* at 660. Assignments are clearly cognizable in admiralty. *E. g., Ozanic v. United States,* 188 F.2d 228, 231 (2d Cir. 1951); *The Mandu,* 102 F.2d 459, 461–462 (2d Cir. 1939); *Republic of Turkey v. Zadeh,* 112 F.Supp. 933, 934 (S.D.N.Y.1953). In this case American obtained valid assignments of the rights of the three claimants against Valley. Valley challenges the validity of those assignments, however, on the basis that by releasing American the damaged parties also released Valley, and, therefore, argues Valley, there was nothing to assign.

■ Each claimant executed one document in favor of American which purported to be both a release of the party's claim against American and assignment of its claim against Valley.[1] Valley would have us read each document as two, with the first, the release, executed before the second, the assignment. This argument would also require us to hold that execution of the assignment portion of each document was a meaningless act. Obviously each claimant had to intend to retain its cause of action against Valley or they would have had nothing to assign. Basic to contract interpretation are the principles that the writing is read as a whole and interpreted in a way that will give effect to its general purpose, and an interpretation which makes the contract valid and reasonable will be preferred to that which would make it void or meaningless. 4 Williston on Contracts, 710–711, 747–749 (3d ed. 1961). And in releases as in other contracts, the intent of the parties, as expressed in the document and in light of the circumstances, should be given effect. 15 Williston on Contracts, 472–473 (3d ed. 1972). It is plain to us that in consideration for the payments received from American, the injured parties intended to 1) give a release of their claims against American and the charterer, 2) retain, for purposes of giving an assignment, their claims against Valley, and 3) give an assignment of their claims against Valley to American. Since the latter aim could not be effectuated without reservation of the claims against Valley, reservation of such claims is apparent on the face of each document, and the assignments were therefore valid.

For the foregoing reasons the award of summary judgment to the Valley Line Company was improper. Accordingly the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

LAY, Circuit Judge (concurring and dissenting).

I agree that it was error for the district court to grant summary judgment to Valley on American's right to pursue equitable subrogation. However, contrary to the majority opinion, whether American is precluded from equitable subrogation depends on whether the trier of fact finds American acted as a volunteer or whether it acted under compulsion. It is difficult for me to perceive how it may be said that that factual question is not in dispute when the case comes to us only on a summary judgment based on the pleadings. All the pleaded facts are in issue and still sub-

---

1. The document executed by Sioux City & New Orleans Terminal Corp. is attached as an appendix to this opinion. The agreements signed by the other claimants, Ory Bros. Marine Service, Inc. and Clark Oil & Refining Corp., were substantially similar.

ject to proof. Whether one acts as a volunteer under the circumstances pled requires analysis of many factors, such as the likelihood of suit, the likelihood of attachment of the vessel and the difficulty of arranging release of the vessel in the event of attachment. *See Crain Bros., Inc. v. Duquesne Slag Products Co.*, 273 F.2d 948, 953 (3rd Cir. 1959). Furthermore, whether a party acts as a volunteer under these circumstances depends as well on the "reasonable good faith belief" that its payment was required to protect its interest. This again is peculiarly a factual question. *See Dampskibsaktieselskabet v. Bellingham Stevedoring Co.*, 457 F.2d 889, 892 (9th Cir.), *cert. denied*, 409 U.S. 1024, 93 S.Ct. 466, 34 L.Ed.2d 316 (1972).

I further agree with the district court that the written assignment given cannot serve as an alternative basis for American's suit. Once the release was obtained and the terminal company was reimbursed for *all* of its damage, it had no property interest or chose in action to assign. Whether the assignment was embodied within the release or not is hardly relevant to the issue of whether at the time it still had an assignable interest. If the terminal company had wished merely to assign its chose in action to American it could have done so. However, it did more than that. It fully *and without reservation* released American for its damage "growing out of, related to, or concerning, whether directly or indirectly, proximately or remotely, the aforestated occurrence on or about March 19, 1971 wherein [the shore facility] claims to have suffered damage to its dock, floating machine shop and office barge."

After releasing American, the terminal company had no interest left to assign. Perhaps the parties did not intend the legal effect of their contract. However, the law must accept their actions as manifested by the four corners of the instrument and not by what they now say they intended. As stated in *Liberty v. J. A. Tobin Construction Co.*, 512 S.W.2d 886 (Mo.App.1974):

In determining whether a release is general and disposes of the whole matter, on the one hand, or limited, on the other hand, it seems that the deciding factor of interpretation is *what* is released not *who* is released by the document. The fact that only *one* tortfeasor is *named* in the release is not conclusive as to its character. Each tortfeasor is liable for the whole damage. . . . *If, therefore, the release by its terms disposes of the whole subject matter, or the cause of action involved, the matter is ended or "dead" even though only one tortfeasor is specifically named in the instrument of settlement.*

512 S.W.2d at 890 (emphasis added).

## APPENDIX

### Agreement of Release and Assignment

Know All Men by these presents that this Agreement of Release and Assignment is made and entered into this 16th day of December, 1971, by American Commercial Lines, Inc., a corporation, hereinafter referred to as "American Commercial", and Sioux City and New Orleans Terminal Corp., a corporation, hereinafter referred to as "Sioux City";

### Witnesseth:

Whereas, on the 19th day of March, 1971, American Commercial was the owner of the M/V R.W. Naye, a diesel towboat, Official No. 578412; and

Whereas, at all times material herein Sioux City was the owner of a certain dock facility, floating machine shop and office barge located on the Upper Mississippi River on the left, descending bank at Hartford, in the State of Illinois, at or near Mile 197.0; and

Whereas, Sioux City claims that on or about March 19, 1971, its aforesaid dock, floating machine shop and office barge was damaged when the M/V R.W. Naye, with a tow of 13 barges, landed against said dock, floating machine shop and office barge, all due to the negligence of American Commercial and its agents, servants and employees, and the M/V

R.W. Naye, and the negligence of others, to wit, The Valley Line, Inc., its agents, servants and employees, and the M/V Frank C. Rand; and

Whereas, American Commercial denies that any damage to the dock facility, floating machine shop and office barge, owned by Sioux City, on March 19, 1971, was caused by any negligence on behalf of American Commercial, its agents, servants and employees, or any negligence on behalf of the M/V R.W. Naye and asserts that whatever damage was caused to said facility at said time was due to the negligence of The Valley Line, Inc., its agents, servants and employees, and the M/V Frank C. Rand; and

Whereas, Sioux City is threatening to bring litigation against American Commercial and the M/V R.W. Naye, and others; and

Whereas, Sioux City and American Commercial are desirous of settling and compromising their differences herein.

Now, Therefore, for the consideration of Twenty-One Thousand Four Hundred Eighty-Two and 09/100 Dollars ($21,-482.09), paid by or on behalf of American Commercial, Sioux City does for itself, its successors and assigns, including any underwriters at interest, hereby release, acquit and discharge American Commercial, and its subsidiary and affiliated companies, American Commercial Barge Line Company and Inland Tugs Co., their successors and assigns, and their agents, servants and employees and any and all vessels belonging to or operated by them, including, without limiting the generality of the foregoing, the M/V R.W. Naye and the charterers, agents, servants and employees and underwriters at interest of such vessels and of American Commercial and American Commercial Barge Line Company and Inland Tugs Co. from any and all claims, demands, dues, liens, liability or causes of action of any kind whatsoever, at law, in equity, or in admiralty, by contract, indemnity, contribution or otherwise, now or hereafter held, owned or possessed by Sioux City on account of, growing out of, related to, or concerning, whether directly or indirectly, proximately or remotely, the aforestated occurrence on or about March 19, 1971, wherein Sioux City claims to have suffered damage to its dock, floating machine shop and office barge located on the Upper Mississippi River at Mile 197.-0.

Further, Sioux City does for itself and any underwriters at interest, for good and valuable consideration, to wit: Twenty-One Thousand Four Hundred Eighty-Two and 09/100 ($21,482.09), hereby sell, transfer, assign and set over to American Commercial Lines, Inc., it successors or assigns, any claim it may have against The Valley Line, Inc., or the M/V Frank C. Rand, arising from the aforesaid accident and gives to American Commercial Lines, Inc., full power and authority for its own use and benefit, at its own cost and expense, to demand, collect, receive, compound and give acquittances for the above-mentioned claim and to prosecute and withdraw any suits or proceedings at law, in equity, or in admiralty against The Valley Line, Inc., and the M/V Frank C. Rand, as fully, to all intents and purposes as Sioux City might or could do if these presents were not made.

It is further understood and agreed that no admission of liability may be drawn from the terms of this Release and Assignment and that each of the parties to this release has denied and still denies liability for itself regarding the aforesaid accident described above and that the amount paid herein is in full compromise and settlement of all issues above described as between the parties to this release and only them.

[Seal]
Attest
·GERALD A. WEIMANN
   Assistant Secretary

Sioux City and New Orleans Terminal Corporation, a Corporation by
E. THOMAS DRENNAN