Augusto **JORGE** and Atlantic City Showboat, Inc., Plaintiffs,

v.

**TRAVELERS INDEMNITY CO.** and **Underwriters Services Inc.,** Defendants/Third–Party Plaintiffs,

v.

**HOME INSURANCE CO.** and City Insurance Co., Third–Party Defendants.

Civil No. 95–00778.

United States District Court, D. New Jersey.

Dec. 10, 1996.

Mark Bridge, Philadelphia, PA, for Travelers.

Jeffrey McCarron, Swartz, Campbell & Detweiler, Philadelphia, PA, for Jorge and Showboat.

N. Jeffrey Brown, Caesar & Napoli, New York City, for USI.

## AMENDED OPINION

IRENAS, District Judge:

Defendants Travelers Indemnity ("Travelers") and Underwriters Services, Inc. ("USI") filed motions for summary judgment,[1] claiming that City Insurance Co. ("City") is not entitled to subrogation. Travelers and USI argue that City's payment to satisfy the judgment against Atlantic City Showboat ("Showboat") was voluntary in nature, thereby depriving City of its right to subrogation. Because this court finds both that the policy under which the payment was made provides for subrogation, and that City did not act as a volunteer, City is entitled to subrogation—either under a conventional or an equitable subrogation theory. Accordingly, defendants' motions for summary judgment are denied.

## I. FACTS

The underlying litigation in this subrogation action involved a personal injury claim by plaintiff Augusto Jorge ("Jorge"), resulting from a motor vehicle accident that occurred on November 29, 1988, while Jorge was a passenger in a limousine owned by Jiffy Executive Limousine Service ("Jiffy") t/a Best Executive Limousine and driven by Richard DeCecco ("DeCecco"), a Jiffy employee. Showboat contracted with Jiffy to transport casino patrons like Jorge. Jorge sued Showboat, Jiffy, and DeCecco alleging liability for the harm caused by the negligence of the limousine company and driver. Showboat cross-claimed for indemnification against Jiffy and DeCecco.

City appointed counsel to represent Showboat, but neither Jiffy nor DeCecco were represented and defaults were taken against them on the complaint and cross-claim. Following a jury verdict on December 17, 1993, judgment was entered in favor of Jorge for $414,500 plus prejudgment interest equal to $93,055.25 for a total of $507,555.25 plus postjudgment interest and costs. Thereafter,

Jorge obtained a default judgment against Jiffy and DeCecco's estate for the amount of the judgment entered on the jury verdict, and Showboat obtained a judgment for indemnity against the same defendants. On April 5, 1994, City paid $400,000 to settle Jorge's judgment against Showboat.

During the course of the underlying litigation, there were disputes over whether City's policy covered Showboat for the Jorge accident. Jorge's claim was first reported to City on November 6, 1990. City began an investigation to determine coverage. At first, a City employee determined that there was coverage under the "garage keeper" liability provision of Showboat's policy. After that determination was made, the file was assigned to Carol Hamilton ("Hamilton") for further handling. Upon reviewing the file, Hamilton believed that coverage under the garage provision was erroneous but that coverage under the "business automobile" policy was more appropriate. Hamilton assigned the defense of the Jorge claim to Swartz, Campbell & Detweiler, who first entered an appearance for Showboat on November 20, 1990.[2] The question later arose as to whether the business auto provision applied to the Jiffy limousine because the provision may have limited coverage only to vehicles owned by Showboat. The investigation showed that Showboat did not own the limousine.

On February 24, 1993, Hamilton sent a "reservation of rights" letter to Showboat, reserving City's right to disclaim coverage at a later date. On May 21, 1993, Hamilton rescinded the reservation of rights. When asked about the switch, Hamilton testified that City "determined that [they] would be estopped from disclaiming coverage since [they] had been handling [the defense] for two years at the time." Hamilton Dep. at 104–05.

This subrogation action was brought by Showboat against Travelers and USI, the

---

1. Defendants filed in the alternative for a motion to dismiss. Because defendants have presented evidence outside the pleadings that will be considered by the court, the motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6).

2. Curtis P. Cheney III, Esq., a Pennsylvania attorney, first appeared for Showboat. When the case was transferred to New Jersey from the Eastern District of Pennsylvania on July 2, 1992, Jeffrey B. McCarron, Esq., who is admitted in New Jersey, took over the defense.

insurers of Jiffy and DeCecco,[3] seeking reimbursement for the $400,000 paid to settle the judgment against Showboat. Showboat also claims that it is entitled to recover $115,149.46 from Travelers and USI, which represents the difference between the amount of the judgment and the settlement payment of $400,000.[4] Jorge assigned all of his interests in his judgment against Jiffy and DeCecco to City and Showboat. The assignment provided that all proceeds recovered in excess of $400,000 should be split equally between Jorge and Showboat. *See* Def.Ex.W. Showboat further seeks post-judgment interest, attorney's fees, and costs incurred in this subrogation action. The instant motions for summary judgment were filed by USI and Travelers, on October 8, 1996, and October 17, 1996, respectively.

## II. DISCUSSION

■ Defendants argue that because City was not obligated to pay the $400,000 to Showboat under the written insurance policy, City should be deemed a volunteer, thereby forfeiting any right to subrogation. Whether City's status as a "volunteer" would defeat its subrogation claim depends on the operative subrogation theory. Subrogation rights are created in one of three ways: (1) an agreement between the insurer and the insured, (2) a right created by statute, or (3) a judicial device of equity to compel the ultimate discharge of an obligation by one who in good conscience ought to pay it. *Culver v. Insurance Co. of North America,* 115 N.J. 451, 455–56, 559 A.2d 400, 402 (1989); *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 N.J. 550, 560, 428 A.2d 1254, 1259 (1981). In this case, subrogation could have been created by either the first or the third option. If the first option is satisfied and subrogation is due under the insurance policy, "conventional" (contractual) subrogation would be operative. If the agreement is not controlling, equitable

subrogation may apply. This distinction is significant because the success of a subrogee's claims hinges on whether or not the payments were voluntary: volunteer status defeats a claim for equitable subrogation, but does not necessarily affect the rights of conventional subrogees. Nevertheless, because this court finds both that payment was made pursuant to the business auto policy and that City was not a volunteer, either conventional or equitable subrogation would be appropriate.

### A. Standard of Review

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the

---

3. Travelers and USI vigorously dispute whether Jiffy and DeCecco are, in fact, entitled to coverage for the Jorge accident.

4. Although presented as one, City's claim for money above the $400,000 settlement is not a subrogation claim. Any proceeds that exceed the settlement amount would be collected pursuant to Jorge's judgment against Jiffy and DeCecco, the rights in which Jorge has assigned to City

and Showboat. *See* Def.Ex.W. Under New Jersey law, City, as a judgment holder, can proceed against Travelers and USI, the insurers of the true tortfeasors. *See In re Hub Recycling, Inc.,* 106 B.R. 372, 376 (citing *In re Estate of Gardinier,* 40 N.J. 261, 265, 191 A.2d 294 (1963)). City's non-subrogation claim, however, is not before this court on the instant motion.

governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

## B. Conventional Subrogation

City included a subrogation clause in Showboat's business auto policy which reads: "If we [City] make any payment, we are entitled to recover what we paid from other parties." The policy also provides that City is obligated to pay only those "sums the insured legally must pay as damages because of bodily injury ... *to which this insurance applies.*" (emphasis added). By its terms, therefore, the clause is only applicable if City made the settlement payment pursuant to the written business auto insurance policy. If the clause applies, City would be entitled to conventional subrogation and voluntariness would be no defense. *See, e.g., Commercial Standard Ins. Co. v. American Employers Ins. Co.,* 209 F.2d 60, 65 (6th Cir. 1954) ("The rule that payments by volunteers will not support subrogation does not apply to conventional subrogation."); *Agricultural Ins. Co. v. Smith,* 262 Cal.App.2d 772, 69 Cal.Rptr. 50, 54–55 (1968) ("Appellant was not obliged to prove the contents of its insurance policy in order to establish its prima facie subrogation case. A subrogation action by an insurer is not a suit on the insurance contract, but an independent action in which

equitable principles are applied to shift a loss for which the insurer has compensated its insured to one who caused the loss or who is legally responsible for the loss caused by another and whose equitable position is inferior to the insurer's.").

▮▮▮ There is no dispute that when City made the decision to accept coverage and assign defense counsel, Hamilton had concluded that coverage was appropriate under the business automobile policy, which contains a subrogation clause. What remains for the court to consider is the impact of the subsequent, and short-lived, attempt by City to question coverage and reserve its rights.

An insurance carrier will be estopped from denying coverage or invoking exclusions from coverage where by its affirmative action it has controlled the defense in a lawsuit. *Griggs v. Bertram,* 88 N.J. 347, 355–56, 443 A.2d 163, 167 (1982). If an insurer undertakes to defend a lawsuit without a valid reservation of rights and the insured reasonably relies on that decision, the company is estopped from later denying coverage based on facts known to it at the time the defense was assumed. *See id.* The rationale behind estoppel in the insurance context is that the insured is justified in relying upon the carrier once the carrier assumes control of the defense. *See id.*[5]

City undertook the defense of Showboat shortly after Jorge filed his complaint. The reservation of rights was not issued until more than two years after the carrier-hired counsel for Jorge and Showboat made his first appearance in this court. Moreover, upon objection from Showboat, the reservation of rights was rescinded three months

---

5. Defendants maintain that estoppel does not apply because the insuring clause affords coverage only to owned autos. Defendants argue that City would have been estopped from denying coverage only if the insuring. language of the policy provided coverage for all autos used in business and City had failed to timely assert a policy exclusion for non-owned vehicles. The court disagrees. The concept of estoppel in New Jersey does not depend on whether the argument for noncoverage is based on the insuring clause or a policy exclusion. *See American Handling Equip. v. T.C. Moffatt & Co.,* 184 N.J.Super. 131, 445 A.2d 428, 432 (App.Div.1982) ("It is clear that a carrier who has issued a policy, by its later

conduct may, for equitable reasons, be refused the right to assert an exclusion *or the absence of specific coverage.*"); *Griggs,* 443 A.2d at 167 (referring to the applicability of estoppel when an insurer undertakes to defend a lawsuit with "knowledge of facts that are relevant to a policy defense *or to a basis for noncoverage of the claim*"). Thus, New Jersey courts recognize that the doctrine of coverage by estoppel is applicable to cases in which the policy itself did not provide coverage. Moreover, the caselaw suggests that estoppel might be permitted even when the insured relies on purported coverage under a nonexistent policy. *See American Handling,* 445 A.2d at 429, 434.

after it was issued.[6] City's decision to abandon its effort to avoid coverage reflected a recognition that it was probably estopped from repudiating the decision which Hamilton had made more than two years earlier—the decision to afford coverage under the business auto policy which contains the subrogation clause.[7] Accordingly, conventional subrogation is appropriate and City can properly step into Showboat's shoes and attempt to recover from Travelers and USI.

### C. Equitable Subrogation

Even if conventional subrogation were inappropriate, equitable subrogation would operate to enable City to proceed against Travelers and USI. This court is satisfied that City's settlement of the Jorge judgment on Showboat's behalf did not make City a volunteer. Therefore, City would not be precluded from recovery under a equitable subrogation theory.

 In general, subrogation is an equitable rather than a contractual doctrine applied in the interests of justice when one who is not a volunteer pays an obligation which should be imposed on another. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137 n. 12, 83 S.Ct. 232, 235 n. 12, 9 L.Ed.2d 190 (1962) (citing *Memphis & L.R.R. Co. v. Dow*, 120 U.S. 287, 301–02, 7 S.Ct. 482, 488–89, 30 L.Ed. 595 (1887)). Generally, subrogation applies where a party, "not acting voluntarily, but under some compulsion" pays a debt or discharges an obligation for which another is primarily liable and which "in equity and good conscience ought to be discharged by the latter." *See, e.g., First Nat'l City Bank v. United States*, 212 Ct.Cl. 357, 548 F.2d 928, 936 (1977) (citing *Compania Anonima*

*Venezolana De Navegacion v. A.J. Perez Export Co.*, 303 F.2d 692, 697 (5th Cir.1962), *cert. denied*, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962)); *see also* Restatement (First) of Restitution § 162 (1936) ("When a person discharges an obligation owed by another ... and does so officiously, he is not entitled to reimbursement from the other."); *Schmid v. First Camden Nat'l Bank & Trust Co.*, 130 N.J.Eq. 254, 22 A.2d 246, 253–54 (Ch.1941) ("Anyone, being under no legal obligation or liability to pay and having no interest menaced by the continuing existence of the debt, is a stranger, and if he pays the debt is a mere volunteer.").

 A payor is not a volunteer if it is acting under compulsion to protect its own interests. *Prairie State Bank v. United States*, 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896); *American Commercial Lines, Inc. v. Valley Line Co.*, 529 F.2d 921, 924 (8th Cir.1976). One is not to be considered a volunteer if one has an interest which is jeopardized by the continued existence of a debt of another and pays the debt to protect that interest. *See Camden County Welfare Bd. v. Federal Deposit Ins. Corp.*, 1 N.J.Super. 532, 552, 62 A.2d 416, 426 (N.J.Super.1948). Several types of interests have been identified as satisfactory "compulsion" so as to free the subrogation-seeking party from classification as a volunteer. *See New York Stock Exch., Inc. v. Sloan*, Fed.Sec. L.Rep.P 97,618, CIV.A. No. 71–2912, 1980 WL 1431, *1 (S.D.N.Y. Aug. 15, 1980) ("Among the protected interests which have been held to give rise to a right of subrogation are: an interest in avoiding litigation and settling a fairly disputed obligation ... the interest of a mortgagee in the mortgaged

---

6. In order for City to have issued a valid reservation of rights, Showboat must have consented, which it did not. *See Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 179 A.2d 505, 512 (1962) ("[If] a carrier wishes to control the defense and simultaneously reserve a right to dispute liability, it can do so only with the consent of the insured.").

7. The court recognizes the possibility that there might be a legal basis to challenge City's conclusion that it was estopped from denying coverage. Determining whether an insured relied on coverage and would be prejudiced by the carrier's withdrawal is a complex inquiry. *See American*

*Handling*, 445 A.2d at 433–34 & n. 2 ("[T]here are many variables that usually must coalesce to raise an estoppel based upon a conclusive presumption of prejudice to the rights of the insured." (quoting *Griggs*, 88 N.J. at 362 n. 3, 443 A.2d at 171 n. 3)). Perhaps standing its ground with respect to the reservation of rights would, in the end, have produced a more favorable economic result for City. However, even if City's decision can be viewed, with 20–20 hindsight, to have been legally or economically sufficient to prevent City from being considered a mere volunteer. *See infra* Part II.C.

property ... the interest of a creditor in maintaining the solvency of a debtor ... the interest of the winning party to an arbitration award in obtaining the report of a referee ... [the interest in maintaining] good business relations.") (citations omitted)[8]; *American Commercial*, 529 F.2d at 924 (finding that payor's desire to avoid potential liability or at least a complex lawsuit was sufficient to avoid volunteer status); *cf. Ford v. United States*, 115 Ct.Cl. 793, 88 F.Supp. 263, 264 (1950) (finding that United States was not a mere "volunteer" in paying debt of Englishman and would be subrogated to the rights of the Englishman where payment was made for "the sake of promoting friendly relations with friendly countries").

Several circuits have developed tests for determining whether it is permissible to subrogate a company that made a payment when the obligation to do so was unclear. The Eighth Circuit requires a showing of the "substantial likelihood" of liability at the time the debt was paid. *See American Commercial*, 529 F.2d at 924. The Sixth Circuit asks whether there is either "any palpable interest" that "will be protected by the extinguishment of a debt" or whether the payment was made under "a moral obligation." *See Commercial Standard*, 209 F.2d at 64. One lower court has expanded the set of rights that will give to subrogation by suggesting that any "reasonable economic interest" will qualify. *See New York Stock Exch.*, 1980 WL 1431, at *1.

In the insurance context, the Tenth Circuit has held that the liability of an insurer need not be "ironclad" in order for it to settle a claim without a subsequent finding that the payment to the insured was voluntary. *See Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir.1987). The Tenth Circuit went on to say that "[a] payment is not voluntary if it is made with a *reasonable or good faith belief* in an obligation or personal interest in making that payment." *See id.* (emphasis added). Any doubt as to the applicability of this principle of no subrogation for voluntary payment by the insurer is construed in favor of the insurer and the nonexistence of a volunteer status. *See Allstate Ins. Co. v. Quinn Constr. Co.*, 713 F.Supp. 35, 38 (D.Mass.1989) (quoting 16 G. Couch, R. Anderson & M. Rhodes, Cyclopedia of Insurance Law § 61:57, at 140 (rev. 2d ed. 1983)), *vacated*, 784 F.Supp. 927 (D.Mass.1990).

■ City had a palpable economic interest in accepting coverage, defending the case, and settling the judgment against Showboat. Not only did City protect its business relations with Showboat (and possibly other customers), but it was also able to control the defense of the litigation and avoid entanglement in insurance coverage litigation. These interests alone are more than sufficient to support City's non-volunteer status and to allow equitable subrogation. It is also evident that for more than two years City believed there was coverage for Showboat. City's belated questioning of this decision and its realization that such questioning came too late to permit revocation of the original coverage decision hardly makes City's actions non-voluntary.

### D. Public Policy

■ There are sound policy reasons for interpreting "volunteer" status narrowly when the payor is an insurer like City. First, public policy favors the prompt payment of claims made by an insured against an insurer and disfavors assertion by an insurer of technical defenses to avoid liability on the policy. *See Smith*, 69 Cal.Rptr. at 55. Were an insurer's right to subrogation imperiled unless it asserted all potential defenses against its insured before it paid a claim, the obvious result would be that insurers would resist prompt payment of claims. *Weir*, 811 F.2d at 1395 n. 6; *Allstate*, 713 F.Supp. at 38; *Smith*, 69 Cal.Rptr. at 55. This result cannot be supported upon the

8. Judge Broderick notes in *New York Stock Exch.* that although the lessee's reasons for voluntarily agreeing to repair a defective building do not emerge from the court's opinion in *Industrial Dev. Bd. of the Town of Section, Alabama v. Fuqua Indus.*, 523 F.2d 1226 (5th Cir.1975), the "circumstances suggest that it was done to maintain good business relations with the lessor." *New York Stock Exch.*, 1980 WL 1431, at *1. Moreover, Judge Broderick cites *Fuqua* as support for the proposition that any "reasonable economic interest" will support subrogation rights.

principles of either equity or common sense. *Id.*

If Showboat, rather than City, had paid the judgment, Showboat would without a doubt have a right to recover against Travelers and USI. *See supra* n. 3. The result should be no different merely because Showboat's insurance company signed on the dotted line. *See New York Stock Exch.*, 1980 WL 1431, at *2 ("Every equitable consideration in the context of the case suggests that plaintiffs having reimbursed customers ... who lost their funds or securities through the machinations of the defendant ... should have the right to pursue the remedies which would have been available to the customers if they had not been reimbursed."). Travelers and USI would be held liable if Showboat had itself paid the judgment. There is simply no public policy reason why the obligation of a tortfeasor's carrier should depend on the action or inaction of another party's insurer.

### III. CONCLUSION

Defendants' motions for summary judgment must fail. City has subrogation rights against Travelers and USI under both conventional and equitable theories of subrogation. City paid the Jorge judgment pursuant to its business auto policy and later concluded that it was estopped from repudiating this decision. Thus, conventional subrogation is in order. Even if conventional subrogation were inappropriate, equitable subrogation would apply because City should not be classified as a volunteer. City's interests in preserving business relationships, in controlling the defense of the action, and in avoiding entanglement in complex insurance coverage litigation more than suffice to prevent City from being labeled a volunteer.

Public policy also dictates that City should be entitled to subrogation. Denying subrogation would undermine the goal of encouraging insurance companies to make prompt coverage determinations. Moreover, Travelers and USI, as the alleged insurers of Jiffy and DeCecco, the true tortfeasors in this underlying litigation, should not escape the liability that would have certainly befallen them had Showboat simply paid the judgment on its own. Accordingly, defendants'

motions for summary judgment are denied. An appropriate order will issue.