[No. G009453. Fourth Dist., Div. Three. June 24, 1991.]

ROBERT WALDSMITH, SR., et al., Plaintiffs and Appellants, v.
STATE FARM FIRE & CASUALTY COMPANY et al., Defendants and
Respondents.

694

**COUNSEL**

Patrick E. Catalano and Mark Adams Poppett for Plaintiffs and Appellants.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Hill, Genson, Even, Crandall & Wade, Horovitz & Levy, Peter Abrahams and Douglas G. Benedon for Defendants and Respondents.

**OPINION**

**SONENSHINE, J.**—Robert Waldsmith, Sr., his son, and Coast Federal Savings and Loan Association,[1] the holder of the first trust deed and mortgage on Waldsmith's building, appeal an adverse judgment, denying coverage under Waldsmith's all-risk policy with State Farm Fire & Casualty Company.

---

[1] The Waldsmiths' and Coast's actions were consolidated for trial. Further reference to Waldsmith will include all plaintiffs where necessary.

## I

In December 1983, Waldsmith purchased rental dwelling insurance from State Farm for his San Clemente property. While the policy was in effect, the building was destroyed by a landslide. State Farm denied coverage.

Waldsmith filed suit for, inter alia, breach of contract and unfair insurance practices. At trial, the parties stipulated the court would try the coverage issue, pursuant to State Farm's motion for judgment on the pleadings. The amended judgment provides: "In addition the parties stipulated that for the sole purpose of deciding the coverage issue raised by defendant's motion, the Court would accept plaintiffs' offer of proof that a city water main in one of the streets adjacent to plaintiffs' property was negligently maintained, broke, saturated the soil causing a landslide which destroyed plaintiffs' house. For purposes of the motion it was stipulated that the breakage of the water main was to be considered the predominant cause of plaintiffs' loss." The court found the policy language clearly excluded the loss and granted the motion for judgment on the pleadings.

## II

The policy at issue covers "accidental direct physical loss to the property except as provided in Section I—Losses Not Insured." The latter section provides in paragraph 2: "We do not insure for loss which would not have occurred in the absence of one or more of the following excluded events[2]. . . . [¶] b. Earth Movement whether combined with water or not, included but not limited to . . . landslide . . . ."

Paragraph 3 provides: "We do not insure for loss consisting of one or more of the items below[3]. . . . [¶] a. conduct, act, failure to act, or decision of any person, group, organization or government body whether intentional, wrongful, negligent, or without fault; [¶] b. defect, weakness, inadequacy, fault or unsoundness in: [¶] (1) planning, zoning development, surveying, siting; [¶] (2) design, specifications, workmanship, construction grading, compaction; [¶] (3) materials used in construction or repair or; [¶] (4) maintenance [¶] of any property including land structures or improve-

[2]The following language was inserted at this point: "We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss. . . ."

[3]The following language appears here: "Further, we do not insure for loss described in Paragraphs 1. and 2. immediately above regardless of whether one or more of the following: a) directly or indirectly cause, contribute to or aggravate the loss; or b) occur before, at the same time, or after the loss or any other cause of the loss. . . ."

ments of any kind whether on or off the residence premises. [¶] However, we do insure for ensuing loss from items a and b unless the ensuing loss is itself a Loss Not Insured by this Section."

■ "In a first party claim case, such as the one before us, whether a claim is covered or excluded under the terms of the policy turns not on whether the alleged cause of the loss was a concurrent cause of the damage, but whether it was the 'efficient proximate cause' of the loss." (*Brodkin* v. *State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 216 [265 Cal.Rptr. 710].)

■ Waldsmith's attorney announced at the hearing, "Our position is that the evidence will show by a preponderance that a city water main in one of the streets adjacent to where the slide occurred had been negligently maintained and had been leaking for quite some time. It finally broke. [¶] The soil was saturated with water and the hillside gave way. Three homes, one of which was Mr. Waldsmith's, went down the hill. . . . We alleged the predominant cause of the loss was the negligent conduct of the city in maintaining its water main in the street. [¶] In other words, we believe that we can overcome defendant's contention that the predominant cause was the landslide."

The parties then stipulated the court should consider, for purposes of its determination, that the efficient proximate cause of the loss was negligence by the city. There is no disagreement with the fact the ultimate cause of the loss was the landslide, clearly an excluded peril. And negligent maintenance of the water main appears to fall squarely under the exclusions contained in paragraph 3, i.e., negligent conduct of a government body, inadequacy in workmanship, materials used in repair, or "maintenance of any property . . . of any kind whether on or off the premises."

In *Murray* v. *State Farm Fire & Casualty Co.* (1990) 219 Cal.App.3d 58 [268 Cal.Rptr. 33], the plaintiff claimed a covered loss from leakage of a water pipe where the leakage was caused by corrosion; but there was no liability because the damages resulted from deterioration. However, the court noted, "[O]ne might similarly argue that the predominating cause of the loss was the negligence of the individual or company who installed the copper pipe with insufficient protection against electrolysis. The Murrays' policy, however, specifically excludes coverage for any 'defect, weakness, inadequacy, fault or unsoundness in . . . design, specifications, workmanship, construction [or] materials used in construction . . . of any property.' " (*Id.* at p. 64, fn. 2.) Thus, that theory, too, was of no avail to the plaintiff. Waldsmith's policy contains the same language and commands the same result. As in *Brodkin*, "the exclusion is clear and unambiguous and expressly

covers the damage claimed here." (*Brodkin* v. *State Farm Fire & Casualty Co.*, *supra*, 217 Cal.App.3d 210, 218.)

Neither the ultimate cause of the loss (landslide) nor the stipulated efficient proximate cause (negligent maintenance by the city) was a covered peril. There is no coverage under the policy pursuant to the facts presented to the trial court.

## III

On appeal, for the first time, Waldsmith contends the proximate cause of the loss was the sudden and accidental discharge of water from a "plumbing system," a covered peril. He relies on the following language in the policy for coverage: "We do not insure for loss to the property . . . either consisting of, or directly and immediately caused by, one of the following: . . . [¶] f. leakage or seepage of water or steam *unless sudden and accidental from any*: [¶] (1) heating or airconditioning system; [¶] (2) household appliance; or [¶] (3) *plumbing system*, including from or around any shower stall or other shower bath installation, bath tub or other plumbing fixture." (Italics added.)

Nothing in the complaint refers to a "sudden and accidental" leakage. In fact, the complaint states "a landslide occurred, the cause of *which was continuous in nature* . . . ." (Italics added.) And, as was emphasized earlier, Waldsmith insisted at the hearing the "predominate cause of the loss was the negligent conduct of the city in maintaining its water main in the street."

Moreover, it is immediately apparent, upon reading the section of the policy from which the above cited portion is taken, that the entire paragraph refers to plumbing, heating and air conditioning systems within or a part of the dwelling. In other sections of the same paragraph, heating and air conditioning are included with plumbing, i.e., "freezing of a plumbing, heating or air conditioning system" is not covered unless heat was maintained *in the building* and/or the water supply was shut off and the system and appliances drained. Moreover, the "plumbing system" appears separately from "heating or air conditioning system" in subdivision (f) above only to add a specific exclusion: Loss from seepage is excluded from "(3) plumbing system, including from or around any shower stall or other shower bath installation, bathtub or other plumbing fixture."

Immediately following the language cited by Waldsmith is the following sentence: "If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building

necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped." It would hardly be necessary to tear out any part of Waldsmith's building to repair the city's water main.

We are cited to *no case* where coverage for accidental leakage from a "plumbing system" relates to any system other than one directly connected to and a part of the covered residence. (See *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889] ["sewer pipe from the house"]; *Murray* v. *State Farm Fire & Casualty Co., supra*, 219 Cal.App.3d 58 ["water leak in their home"]; *Sauer* v. *General Ins. Co.* (1964) 225 Cal.App.2d 275 [37 Cal.Rptr. 303] ["leakage of water from a part of the plumbing system of said house"].) Only by a gigantic leap in logic could we find a city's water main in the middle of a city street was included in this section's "plumbing system."[4]

## IV

The court based its denial of coverage on *State Farm Fire and Cas. Co.* v. *Martin* (C.D.Cal. 1987) 668 F.Supp. 1379, where the court relied on exclusionary language similar to that contained in the present policy (see fns. 2 and 3): "[T]he policy specifically states that it does not insure for any loss that would not have occurred in the absence of certain events, including earth movement and water damage . . . 'regardless of . . . any other causes, or whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.' " (668 F.Supp. at p. 1382.)

Waldsmith claims this is erroneous under *Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446 [267 Cal.Rptr. 708]. We need not, however, reach this issue. Here, the *stipulated* efficient proximate cause of the loss is itself a specifically excluded peril. Therefore, the judgment is correct on that basis. There is no need to reach the questioned "concurrent proximate cause" language in footnotes 2 and 3, *ante*. A judgment correct on any legal basis need not be overturned because the court relied on an allegedly erroneous reason. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

---

[4]The plaintiff in *Finn* v. *Continental Ins. Co.* (1990) 218 Cal.App.3d 69 [267 Cal.Rptr. 22] sought payment for loss resulting from a leaking pipe which caused damage to her residence's foundation: "She argues that a sudden break is a covered peril and that such a sudden break was the efficient proximate cause of the leakage here . . . ." (*Id.* at p. 71.) Not so, said the court. "That argument is premised on viewing the leakage and the break as two conceptually distinct events, linked only causally. But 'leakage' and 'seepage' necessarily imply some break or gap in the thing leaking. Thus the verb 'leak' is defined, 'to enter or escape through a hole, crevice, or other opening usu. [*sic* ] by a fault or mistake.' [Citation.] 'Seep' means 'to flow or pass slowly through fine pores or small openings.' [Citation.]" (*Id.* at p. 72.)

Judgment affirmed. Respondents to receive costs.

Sills, P. J., and Crosby, J., concurred.