Filed 9/13/21  P. v. Cooper CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN COOPER,<br><br>    Defendant and Appellant. | E076107<br><br>(Super.Ct.No. FMBMS008603)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Lorenzo R. Balderrama, Judge. Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Benjamin Cooper is indefinitely civilly committed as a sexually violent predator (SVP). In 2015, he unsuccessfully petitioned the court seeking conditional release. In June 2020, he filed another petition for conditional release, which the trial court summarily denied. On appeal, Cooper argues he was entitled to a hearing on his petition. We disagree and affirm.

## I.  FACTS

### A.  *2015 Petition*

In 1993, Cooper was convicted of eight counts of lewd and lascivious conduct with a child (Penal Code, § 288, subd. (a)) and one count of annoying or molesting a child (Penal Code, § 647.6). Cooper was paroled in 2006, but six months later parole was revoked. Between 2006 and 2010 he shifted between the Department of State Hospitals and prison, until finally being committed to the Department of State Hospitals as an SVP in 2010.

In 2015, when Cooper was 56 years old, he filed a petition for conditional release from his indefinite civil commitment under Welfare and Institutions Code section 6608. Along with his petition he submitted a report from a psychologist, Dr. C. Fisher, Psy.D. Dr. Fisher concluded Cooper suffered from pedophilic disorder, antisocial personality disorder, borderline personality disorder, and a substance use disorder. Fisher said that though Cooper suffered from pedophilic disorder, he was "not intensely focused on sex with prepubescent children . . . and no evidence in this case suggests that he *prefers* sex with children," as he had "non-exclusive" pedophilic disorder and was

2

sexually attracted to both children and adults. He also noted that "recidivism rates decline significantly over time, and drop precipitously by the time an offender is in his late 50s and 60s." Dr. Fisher concluded Cooper was "not likely to engage in sexually violent criminal behavior . . . if under supervision and treatment in the community." However, he also noted Cooper was "far from a finished treatment product," and was still "in the middle stages of treatment."

After a hearing, the court concluded Cooper was unsuitable for conditional release and denied the petition.

### B.    *2019 Annual Evaluation*

In December 2019, the hospital conducted its annual evaluation of Cooper under Welfare and Institutions Code section 6604.9. Cooper was 61 at the time. The evaluation concluded he suffered from pedophilic disorder, alcohol use disorder, opioid use disorder, and antisocial personality disorder, and that he was still an SVP and couldn't be treated in the community or unconditionally released.

Specifically, the evaluation noted "Cooper's Pedophilic Disorder overwhelms his volitional and emotional controls," and that his "Alcohol Use Disorder, Opioid Use Disorder, and Antisocial Personality Disorder exacerbate the breakdown of volitional and emotional control," such that "whatever strategies he uses to control his Pedophilic Disorder are unreliable at best." It also noted "Cooper's diagnosed mental disorders have not changed," and continue to "predispose him to the commission of sexually violent

3

criminal acts." In addition, Cooper's most recent Static-99R score was three, which meant he was at an average risk of reoffending.

The hospital's evaluation also concluded, based on his medical history, Cooper's condition had not meaningfully improved over time. In 2018, Cooper was actively participating in treatment and making progress, but in 2019 he only attended half of the group treatment sessions and had three straight months of absences during which he made no progress. His attendance and progress in voluntary, ancillary group therapies was also poor, though he continued to sign up for them. Additionally, Cooper hadn't completed the various services and treatment plans necessary to prepare him for community outpatient treatment. The hospital concluded his "unreliable progress in treatment [did] not bode well for adequate protection of the community under conditional release."

### C.    *The 2020 Petition*

Dr. Fisher interviewed Cooper again in December 2019, around the same time as the annual report, and prepared another report based on that interview. The report noted Cooper was now 61 years old and that there were "significant declines in recidivism rates as offenders aged, with offense rates for men over 60 almost universally at or below 5%." Dr. Fisher diagnosed Cooper as suffering from pedophilic disorder only, and concluded he no longer suffered from antisocial personality disorder, borderline personality disorder, or any substance use disorder. He found Cooper's risk of reoffending low because his pedophilia was non-exclusive. Moreover, in Dr. Fisher's opinion Cooper's

4

pedophilic disorder was no longer a "qualifying mental disorder for SVP purposes because it is not characterized by emotional or volitional impairment and it does not cause him current serious difficulty controlling his sexual behavior." Dr. Fisher estimated that under the Static-99R, Cooper's likelihood of re-offense was down to 7.9 percent from 15 percent in 2015 because he was older than 60. Dr. Fisher concluded once again that Cooper remained unlikely "to engage in sexually violent criminal behavior . . . if under supervision and treatment in the community." Accordingly, Dr. Fisher felt Cooper was unlikely to reoffend if released unconditionally and would be even less likely to reoffend if released conditionally. However, he continued to believe Cooper's treatment was "far from [] finished."

In June 2020, Cooper filed another petition for conditional release, without the concurrence of the Director of State Hospitals. He submitted Dr. Fisher's report, and the People filed an opposition, arguing he was not entitled to a hearing.

In September 2020, the trial court agreed with the People and summarily denied the petition. It found the only change in Cooper's condition from 2015 was that he was older and had made some progress in treatment. However, this progress was marred by poor attendance and participation in treatment. The court also noted that in its opinion Dr. Fisher's assessment hadn't meaningfully changed since 2015, and when compared with the 2019 annual evaluation, Dr. Fisher's conclusions were "suspect since he believes that [Cooper]'s diagnosed mental disorder no longer causes volitional impairment, or, in other words, he no longer meets SVP criteria, and therefore no longer requires treatment

5

even in conditional release." Based on this, the court concluded there were insufficient facts to show Cooper's condition had changed since the last petition. The court further concluded that because there was no change of circumstances, the petition was frivolous. The court therefore denied the petition without a hearing, and Cooper timely appealed.

## II.  ANALYSIS

Cooper argues the trial court's failure to hold a hearing on his petition was an abuse of discretion. As we'll explain, we disagree.

Anybody "who has been committed as a sexually violent predator," may "petition the court for conditional release . . . without the recommendation or concurrence of the Director of State Hospitals." (Welf. & Inst. Code, § 6608, subd. (a), unlabeled statutory citations refer to this code.) However, "[o]nce an SVP files such a petition and it is denied, the court has the right to summarily deny any subsequent petition ' "unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted." ' " (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1084.) In addition, "[u]pon receipt of a first or subsequent petition . . . without the concurrence of the director, the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing." (§ 6608, subd. (a).)

We review a trial court's denial of a petition for conditional or unconditional release for abuse of discretion. (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408; see *People v. Collins* (2003) 110 Cal.App.4th 340, 349.) This means we "review the record to determine if, considering all the circumstances before it, the trial court exceeded the bounds of reason. Where there is a basis for the trial court's ruling and it is supported by the evidence, we will not substitute our opinion for that of the trial court." (*People v. Reynolds*, at p. 1408.)

Cooper argues the trial court abused its discretion because his petition *did* contain "facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted." (§ 6608, subd. (a).) In support, Cooper points to the positive aspects of Dr. Fisher's 2020 report. He emphasizes Dr. Fisher concluded he was at a low risk of reoffending and could safely be released because he (i) no longer qualifies as an SVP, (ii) no longer suffers from antisocial personality disorder, borderline personality disorder, or substance use disorder, and (iii) showed no arousal from "either deviant or non-deviant stimuli" in a 2016 PPG exam, and (iv) his Static-99R score decreased from five to three.[1]

But the People correctly point out that much of Dr. Fisher's latest report is not meaningfully different from his 2015 report. For instance, Dr. Fisher's conclusions that Cooper no longer qualified as an SVP and could be released unconditionally were based on Cooper's age and the fact he "is not intensely focused on sex with prepubescent

---

[1] PPG stands for "penile plethysmograph," a test that measures a man's level of sexual arousal in response to various stimuli.

7

children at this time in his life, and no evidence in this case suggests that he *prefers* sex with children." But these same factors were present in 2015. Indeed, Dr. Fisher's reports on these points are nearly identical, and any changes are merely because Cooper is older and not because he has made significant progress. Dr. Fisher's discussion of age as a protective factor is also nearly identical between the reports. The only changes are adjustments for Cooper's increased age, and a greater discussion of how that age reduces his recidivism risk. This is also true of Cooper's Static-99R score. In 2015 he scored a five because he received a negative one modifier for his age. In 2020 he received a score of three because the age modifier increased to negative three once Cooper turned 60. Except for his age, nothing else about his score on this test changed. Finally, the discussion of Cooper's pedophilic disorder is substantially the same between the reports. The only major difference is the 2020 report contains an explanation that pedophilic disorder is not a binary condition, and that symptoms can vary in intensity over time and even disappear altogether even without treatment. None of these alleged changes is attributable to Cooper's actual progress or prognosis.

In addition, the People point out those elements that are meaningfully different between the reports did not have any impact on Dr. Fisher's recommendations. For instance, though it's true that in 2020 Dr. Fisher concluded Cooper no longer suffered from antisocial personality disorder, borderline personality disorder, and substance use disorder, these were never significant contributors to his likelihood to reoffend in the first place. In 2015, Dr. Fisher said "given that [Cooper's] sexual offending always occurred

8

in the context of a severe Borderline personality disorder, and that personality disorder is now being well managed . . . I would estimate his chance of sexually violent recidivism to be even lower than the 15% suggested by the Static-99R . . . If he were to return to a lifestyle of drug abuse, or if his psychiatric symptoms were to return, his likelihood of sexually violent recidivism would of course be higher, but in my opinion neither of these possibilities is likely to occur." Dr. Fisher's 2020 report contained this exact same passage, changing it only to reflect the lower percentage of "7.9% suggested by the Static-99R." Therefore, it's clear that Dr. Fisher felt Cooper had his comorbid mental health issues under control in 2015 to the same degree as in 2020, and in neither case did the official diagnosis or lack thereof contribute to Dr. Fisher's recommendations.

In a similar vein, the results of Cooper's 2016 PPG exam do not demonstrate a change in condition. Dr. Fisher acknowledged in the 2020 report that Cooper admitted to having some erectile dysfunction as a result of his medication. And indeed the hospital's 2019 evaluation ascribed the decreased arousal response in Cooper's 2016 PPG results to a side effect of his antidepressant medication. Though the hospital noted Cooper was on the same antidepressants during his initial PPG, the possibility of the medication's interference with the exam results likely explains why Dr. Fisher didn't cite the PPG results as a basis for recommending release.

Based on all of the above, we conclude the trial court did not abuse its discretion when it determined Cooper's petition failed to demonstrate a change of condition. Simply put, the only significant change was Cooper had aged five years. The other changed circumstances were not relevant to his safety risk.[2]

## III.  DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____

J.

We concur:

MILLER _____

Acting P. J.

RAPHAEL _____

J.

---

[2] Having concluded the trial court properly denied Cooper's petition because it didn't demonstrate a change in circumstances, we need not address his additional argument that the court erred by finding his petition frivolous. (*Waldsmith v. State Farm Fire & Casualty Co.* (1991) 232 Cal.App.3d 693, 698 ["[a] judgment correct on any legal basis need not be overturned because the court relied on an allegedly erroneous reason"].)